UNITED STATES of America,
Plaintiff–Appellee,

v.

Egbert RICHARDSON, a/k/a Bunny,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Ivan TAYLOR, a/k/a Carlos,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Egbert RICHARDSON, a/k/a Bunny,
Defendant–Appellant.

Nos. 89–5263, 89–5264 and 90–7045.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1991.

Decided July 1, 1991.

As Amended Aug. 6, 1991.

Steven Douglas Dennis, Holler, Dennis, Olive, Merry, Lengel & Garner, Columbia, S.C., argued (Victor T. Gutierrez, Law Offices of Victor T. Gutierrez, Miami, Fla., and Thomas B. Levy, Sr., on briefs, Columbia S.C.), for defendants-appellants.

Mark C. Moore, Asst. U.S. Atty., argued (E. Bart Daniel, U.S. Atty., Robert C. Jendron, Jr., Asst. U.S. Atty., on brief), Columbia, S.C., for plaintiff-appellee.

Before RUSSELL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

CHAPMAN, Senior Circuit Judge:

Ivan Taylor, Egbert Richardson, Anna Jean Bradley, and Freddie Lloyd were indicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Taylor and Richardson were also indicted for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Taylor, Richardson and Bradley entered pleas of guilty to the conspiracy count, and Taylor received a sentence of 190 months, Richardson 200 months, and Bradley 97 months. All the sentences contained a five year period of supervised release. The appellants had been sentenced prior to the time that Freddie Lloyd was arrested. Appellants Taylor and Richardson agreed to testify for the government in the Lloyd trial. Shortly after Richardson testified, Lloyd entered a plea of guilty. The government then filed a motion for correction of sentence under Federal Rule of Criminal Procedure 35(b) as to both Taylor and Richardson and the district court reduced the sentences of both Taylor and Richardson by 35 months each.

Appellants Taylor and Richardson appeal their sentences. Taylor claims that the

district court erred in classifying him as an organizer or leader of five or more participants under U.S. Sentencing Guideline (U.S.S.G.) § 3B1.1(a) and increasing his offense level by four, because he claims the evidence showed that he was only a supplier of cocaine and not an organizer or leader. He also claims error by the district court in failing to grant him a further downward departure particularly in view of the motion of the government supporting a downward departure and the substantial assistance given by him and a downward departure for a less deserving codefendant. Richardson claims error in his sentence because the district court found: (1) that he was reasonably capable of producing ten kilograms of cocaine under negotiations he had with an undercover agent; (2) that it was reasonably foreseeable to Richardson that Taylor would be able to sell additional cocaine in South Carolina without his personal involvement; and (3) that he was an organizer or leader under U.S.S.G. § 3B1.1(c). Richardson also claims error because the district court did not reduce his sentence proportionately with his codefendant.

I

Egbert Richardson lived in Miami with his common law wife, Anna Jean Bradley.[1] In 1984, Richardson met Ivan Taylor, an Hispanic Miami businessman, who operated a small furniture factory, and they decided to go into the cocaine business. Taylor was to provide the money and Richardson was to arrange the purchase and sale of the cocaine. It was not long before Taylor began to take a more active role in the business. Taylor found that Richardson was unreliable because he personally used cocaine and was often short cocaine and money that had been received. Taylor and Richardson soon parted company, and Taylor began to deal directly with suppliers and consumers to whom he had been introduced by Richardson.

In 1987, Richardson returned to Taylor with another cocaine proposition. Richardson had been traveling in South Carolina, and he advised Taylor that the Holly Hill and Orangeburg areas of South Carolina and the area around High Point, North Carolina were "dry" and in need of cocaine. He argued that the partners could prosper from the consumer demand and the high prices available in these areas. In the fall of 1987, Richardson and Taylor traveled by plane to Charleston, South Carolina where they met Richardson's friend, Freddie Lloyd. Taylor had brought with him approximately one kilogram of cocaine and had paid Richardson's travel expenses. The appellants then traveled with Lloyd to Lee County where they met Henry Lee Harris and Anthony Joe McFadden, who purchased Taylor's kilo of cocaine for $22,-000. Charles Mason Jones and Willard Scott Wearing were also present at this meeting. Richardson and Taylor then returned to Miami, but approximately two weeks later they returned to South Carolina. Just prior to their return to South Carolina, they had made a trip to North Carolina to deliver cocaine to a buyer produced by Richardson. The buyer was known only as Charlie.

On this second trip to South Carolina, Richardson and Taylor traveled by automobile and stopped at a motel in Santee, South Carolina. Taylor had with him approximately one pound of cocaine. Richardson vanished with half of the cocaine and Taylor's car. Richardson later explained that he used most of the cocaine to party with several female friends.

Taylor returned to Miami alone and complained of Richardson's behavior to Bradley, who advised him that she was not responsible for Richardson, and that Richardson had cost her money by running up large telephone bills without payment.

After this trip to South Carolina, Taylor had nothing further to do with Richardson. However, Taylor returned to South Carolina on several occasions and eventually

---

**1.** Bradley entered a guilty plea to possession of cocaine with intent to distribute on charges arising out of the same facts. She received a sentence of 97 months and appealed. Her conviction and her sentence were affirmed by this court on March 19, 1991. 928 F.2d 400 (1991)

sold approximately 13 kilos of cocaine to McFadden and Harris, and he sold an additional two and a half kilos in North Carolina to the buyer he had previously met through Richardson. The South Carolina customers were eventually arrested for cocaine trafficking and they identified Taylor and Richardson as the source of their cocaine supply.

Prior to arresting Taylor and Richardson, a South Carolina law enforcement division (SLED) agent, who had obtained Richardson's telephone number when Harris and McFadden were arrested, contacted Richardson by telephone and attempted to purchase ten kilograms of cocaine. This deal was never consummated. Although the SLED agent wired $1300 in expense money to Florida, most of these funds ($1,000) went to Bradley, who advised the SLED agent that she might be able to put together a large purchase for him.

After Richardson, Taylor and Bradley were arrested, Richardson was the first to admit guilt and enter into a plea agreement. Eventually Taylor and Bradley also pled guilty. At sentencing, the court found that Taylor had a total offense level of 34 with a criminal history category II. This calculation was derived from using a base offense level of 32 from the court's finding that the total amount of cocaine attributable to Taylor was 13 kilograms, then adding a four level increase as a leader or organizer under § 3B1.1, and a two level reduction for acceptance of responsibility under § 3E1.1. These calculations produced a guideline range of 160 to 210 months and the court entered a sentence of 190 months in prison to be followed by a five year period of supervised release. Approximately one month after the sentencing of Taylor and Richardson, Freddie Lloyd was arrested. Both Taylor and Richardson agreed to testify against Lloyd. After Lloyd's trial began, Richardson was the government's first witness. When he had completed his testimony, Lloyd entered a guilty plea. The government then filed a motion for correction of sentence under Rule 35(b) and the district court reduced Taylor's sentence by 35 months leaving him with a corrected sentence of 155 months.

At the sentencing of Richardson, the court found his total offense level to be 36 with a criminal history category I. This calculation resulted from use of a base offense level of 32 upon a finding by the court that the total amount of cocaine attributable to Richardson was 23 kilograms. This weight was derived by adding the amount distributed by Richardson to the amounts distributed by Taylor, after the partnership ended, and the ten kilograms under negotiation by telephone with the SLED agent from South Carolina. Richardson also received a four level increase under § 3B1.1 and a two level reduction for acceptance of responsibility under § 3E1.1. These calculations resulted in a guideline range of 188 months to 235 months, and Richardson received a sentence of 200 months in prison to be followed by a five year term of supervised release. As a result of the government's motion following Freddie Lloyd's plea of guilty, the court reduced Richardson's sentence by 35 months leaving a corrected sentence of 165 months.

## II

■ Taylor claims error by the sentencing judge in finding that he was leader of a criminal activity that involved five or more participants and increasing his offense level by four under § 3B1.1(a) which provides "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."

■ The adjustments in the offense level under § 3B1.1(a) for the defendant's role in the offense are factual determinations and the district court's findings on this issue are reviewed under a clearly erroneous standard. *United States v. Daughtrey*, 874 F.2d 213 (4th Cir.1989). The record shows that Richardson had the initial contacts in South Carolina and North Carolina that were used to distribute cocaine, but that Taylor was the real leader and that, without Taylor, there would have been nothing to distribute. Taylor had the financial resources needed to buy the co-

caine. Initially, Taylor was to furnish money and Richardson was to acquire and distribute the cocaine. When Richardson proved unreliable by using cocaine instead of selling it, Taylor handled the purchasing and the distribution.

When the conspiracy was renewed in 1987, Taylor was the obvious leader. He furnished the money, paid the travel expenses of both himself and Richardson, and he had refused to allow Richardson to go back to South Carolina alone. When Richardson ran off with half of the cocaine and with Taylor's automobile in Santee, Taylor contacted Lloyd and had Lloyd drive him to meet Harris. Taylor refused to take Richardson on any subsequent trips to South Carolina, and, without Richardson's assistance or presence he was able to sell 11 additional kilograms of cocaine in South Carolina. He thereby increased his share of the profits. Application Note 3 of the Commentary to § 3B1.1 provides:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

When Taylor's activities are viewed in light of this note, it is obvious that he was both an organizer and a leader of the criminal activity and that without him the activity would not have existed. After the split at Santee, Taylor was the undisputed leader and claimed "a larger share of the fruits of the crime."

Taylor also challenges the finding that the activity involved five or more participants. This claim is without merit. Taylor's first meeting in South Carolina in the fall of 1987 included himself, Richardson, Lloyd, Harris, McFadden, Jones and Wearing. In addition, there was Anna Jean Bradley who was involved in the activity and entered a plea of guilty. There were ample facts to support the district court's

finding that a four level increase was appropriate under § 3B1.1.

■ Taylor also claims that the district court erred in failing to make a downward departure from the sentencing guidelines at the time of his original sentence, particularly in light of the government's motion under § 5K1.1 for a downward departure of ten to fifteen percent "from the lowest sentence authorized by the guidelines" and the district court's granting of a reduction of sentence to Anna Jean Bradley, a less deserving codefendant.

Guideline § 5K1.1 provides:

Upon motion of the government stating that the defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person who has committed an offense, the court *may* depart from the guidelines. (Emphasis added)

■ It is obvious from the language of this section that motions by the government for a downward departure are committed to the discretion of the sentencing judge. In *United States v. Bayerle*, 898 F.2d 28 (4th Cir.1990), we held that a refusal by a district judge to depart downward in response to a defendant's motion was not appealable. Taylor argues that *Bayerle* is not applicable to the present facts because the government made a motion for a downward departure in his case and had not done so in *Bayerle*. However, this does not remove the motion from the sentencing court's discretion, and there has been no showing of an abuse of discretion by the court in denying Taylor's motion. The granting of a downward departure to a codefendant is not sufficient to establish abuse.

The Sentencing Reform Act of 1984, 18 U.S.C. § 3742, expanded appellate review of sentences, but limited it to four claims. Appeal of the sentence is available only when the sentence is: (1) in violation of law; (2) based on an incorrect application of the guidelines; (3) greater than the maximum set by the guidelines; or (4) imposed for an offense for which no guideline has been promulgated and is plainly unreasonable. *Id.* Appellant does not fit into any

of these exceptions. In response to a Rule 35 motion, the court reduced Taylor's sentence by 35 months, but it was not error for the court to refuse a downward adjustment at the time of the initial sentence or to refuse to grant a reduction greater than 35 months.

## III.

### A.

Richardson makes similar claims that he was not a leader or organizer under § 3B1.1(a) and that the district court abused its discretion in not granting him a reduction in sentence of the same degree or proportion as that granted to his codefendants, particularly to Taylor. There is no merit to either of these claims.

■ Richardson was an organizer of the criminal activity that involved five or more persons. He was the instigator, and with Taylor, an organizer of the conspiracy that began in 1987. He had the contacts in North Carolina and South Carolina who were necessary to the success of their business and who were used in the distribution of the cocaine. He enjoyed a leadership position in the conspiracy until his personal use of cocaine ended his participation. While he was active in the criminal activity, there were five or more persons involved as more particularly set forth in Section II above. The findings of the district court on this issue are not clearly erroneous.

■ Richardson also claims that the reduction of his sentence following the Rule 35 motion was not proportional to the reduction granted to Taylor. Both Richardson and Taylor received reductions of 35 months, but Richardson argues that a reduction of 35 months from Taylor's original sentence of 190 months resulted in a greater percent of reduction than he received when his original sentence of 200 months was reduced by 35 months. There is no requirement of proportionality in the reduction of sentences.

The government argues that the district court's action in response to a motion under Rule 35(b) is not appealable. It is not necessary for us to decide the issue of appealability in this case because the argument by Richardson is so lacking in merit. Under the clear language of Rule 35(b), the judge is not required to grant any reduction. Here, he granted a reduction of the same number of months to both Richardson and Taylor, and there is no requirement of proportionality in these reductions.

### B.

■ Richardson claims error in the district court's findings that he could have reasonably foreseen all of the cocaine distributed by Taylor in South Carolina after Richardson was out of the conspiracy. The court based its findings on three factors: (1) Richardson personally introduced Taylor to the buyers; (2) Richardson and Taylor sold cocaine to the buyers; and (3) Richardson was aware of Taylor's access to large amounts of cocaine.

The government argues that Richardson had knowledge that Taylor made additional sales in South Carolina after their split at Santee, and Richardson could therefore reasonably foresee all of Taylor's sales in South Carolina. Under the government's argument, Richardson, by his short association with Taylor during which he introduced him to several buyers in South Carolina, is responsible for all cocaine sales by Taylor to the South Carolina buyers. The association between Richardson and Taylor ended when Richardson ran off with half of the cocaine and Taylor's automobile at Santee. At this point, Richardson was out of the conspiracy, and he is only chargeable with future sales by Taylor in South Carolina that were reasonably foreseeable at the time of their split at Santee in November 1987.

Richardson argues that he could not reasonably foresee that Taylor would make further sales in South Carolina because Taylor was an outsider, was foreign-born, and the South Carolina contacts were suspicious of foreigners. When Taylor first attempted to sell cocaine in South Carolina without Richardson's involvement, he could not find a buyer, and only one kilogram of cocaine was sold in South Carolina while

Taylor and Richardson were partners. Thus, Richardson argues that he could not foresee the subsequent sale by Taylor of 13 kilos in South Carolina and two and one-half kilos in North Carolina.

■ Normally, a defendant is not responsible for the actions of coconspirators committed after he has ceased to be a member of the conspiracy. However, the sentencing guidelines seek to establish the relevant conduct of a defendant and then to provide an appropriate punishment. Section 1B1.3(a) provides:

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

Application Note 1 § 1B1.3(a) provides: Conduct "for which the defendant would be otherwise accountable," as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused. (*Cf.* 18 U.S.C. § 2.) If the conviction is for conspiracy it includes conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant. If the conviction is for solicitation, misprison or accessory after the fact, it includes all conduct relevant to determining the offense level for the underlying offense that was known to or reasonably should have been known by the defendant.

The "offense of conviction" must be kept in the foreground when considering a de-

fendant's relevant conduct and whether he "would be otherwise accountable" for the acts of a coconspirator. *See United States v. Wood,* 924 F.2d 399, 404 (1st Cir.1991). Richardson was charged with, and pled guilty to, being a member of a conspiracy that existed from June, 1987 to December 20, 1988 with the purpose of possessing with intent to distribute cocaine within the District of South Carolina and elsewhere—this is Richardson's "offense of conviction." However, since this was a jointly undertaken criminal activity, Richardson's relevant conduct is determined by what was "reasonably foreseeable" to him. In making its finding as to what was reasonably foreseeable, the district court found:

If he [Richardson] brought him [Taylor] up here and introduced him to these people in person, and he and Taylor did business with them one time, it would be surely easily foreseeable that if Taylor himself came up again and made the contact with the people he had done business with before, that it was easily foreseeable Taylor could sell that.

In *United States v. Vinson,* 886 F.2d 740 (4th Cir.1989), we held that the sentencing court's findings as to the amount of cocaine distributed by a conspiracy was a finding of fact by the sentencing court and must be accepted on appeal unless clearly erroneous. We have observed:

According to the Commentary to Guideline § 2D1.4, a defendant convicted of conspiracy should be sentenced "only on the basis of [his] conduct or the conduct of coconspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable." Since the base offense level in drug cases, both conspiracy and otherwise, is directly determined by the type and amount of drugs involved, the determination of the foreseeability of the extent of the overall conspiracy is often critical. This is clearly a question of fact which will only be overturned on appeal if it is clearly erroneous. If, as Vinson contends, his criminal conduct was limited to purchasing only 14 ounces for his own use, and further that it was not reason-

ably foreseeable that his codefendants would sell many times that amount during the life of the conspiracy, then a reconsideration of his sentence might well be in order. We do not, however, find that such is the case before us. *Id.* at 742.

Richardson has a much stronger factual case than did Vinson. The only evidence of record shows that Richardson and Taylor renewed their cocaine business in the fall of 1987. They made a trip to South Carolina during which they sold less than one kilogram of cocaine, and Richardson introduced Taylor to Freddie Lloyd, Henry Harris and Anthony McFadden, and, through them, to Charles Jones and Willard Wearing. They made one trip to North Carolina and delivered cocaine to Richardson's contact known only as Charlie. Shortly thereafter, they made a second trip to South Carolina, which resulted in Richardson being forced out of the conspiracy because he deserted Taylor at Santee and took Taylor's car and a large amount of cocaine with him. This cocaine was not sold but used.

Taylor's activities in the Carolinas continued for almost a year after Richardson was out of the conspiracy. For how long would Richardson "be otherwise accountable" for the sale and distribution by his former partner Taylor? The limit, as established by the guidelines, is the amount of cocaine that Richardson could "reasonably foresee" that Taylor could sell through those persons in the Carolinas to whom he had been introduced by Richardson. The present facts represent the outer limits of what could be "reasonably foreseeable." The additional cocaine distributed by Taylor, after Richardson departed, was sold to Richardson's contacts within a year. While it is reasonable to find that Richardson could foresee some additional sales by Taylor, it would be both unreasonable and unfair to hold him responsible for all sales by Taylor to these contacts for an indefinite period of time. Although we cannot say that the findings of the district court are clearly erroneous, we can state that this is about as far as reasonable foreseeability can be taken.

## C.

Richardson also challenges the finding of the district court that he was chargeable with an additional ten kilograms of cocaine because of his telephone conversations with an undercover agent Ken Aycock, who used the name "Pappy." These conversations occurred over a period of eight weeks. They began after Richardson had left Taylor and after Richardson's Miami telephone number had been obtained by South Carolina police officers when they arrested some of the South Carolina customers. Agent Aycock began to call Richardson in an effort to arrange a purchase of ten kilograms of cocaine. This deal was never consummated, but the agent wired $1,300 in expense money to Richardson in Florida. Of this amount, $1,000 went directly to Anna Bradley, Richardson's common law wife, who advised Aycock that she might be able to put together a deal for him. Richardson was not able to produce any amount of cocaine and claimed that he was planning to "rip Pappy off," take some money and not produce the drugs.

The district court found that these ten kilograms were chargeable to Richardson because *if he had the money he could have gotten the cocaine.* This is an inadequate finding and is not supported by any evidence.

Application Note 1 to § 2D1.4 provides in part:

> Where the defendant was not reasonably capable of producing the negotiated amount the court may depart and impose a sentence lower than the sentence that would otherwise result.

There is nothing in the record to support a finding that Richardson could have produced anything that required the payment of money. The reason that he became involved with Taylor in 1984 and again in 1987 was not because Taylor knew anything about the buying and selling of cocaine, but because Taylor had the money necessary to make the purchases and Richardson had the know how to make the sales. The "offense conduct" in the pre-

sentence reports of both Richardson and Taylor indicate that "Taylor was to provide the funding, Richardson was to serve as a 'broker' by locating willing buyers and sellers." The presentence report also indicates that Richardson's usual employment was as a casual laborer, that he had no bank account, no cash on hand and no assets. It is also clear from the record that it would have cost $150,000 to purchase ten kilograms of cocaine for resale. There is nothing in the record to show how Richardson could have raised $150,000 or any substantial amount of money, and without the money he was not "reasonably capable" of producing any cocaine. While he was associated with Taylor, such a deal might have been possible, but Taylor was no longer in the picture and his resources were unavailable to Richardson. Richardson was such a poor businessman that he could not even retain the "expense money" forwarded to him by Agent Aycock; his girlfriend took $1,000 of this amount and tried to interest Aycock into dealing with her. "If" is not sufficient under the guidelines. The test is whether the defendant "was reasonably capable of producing" ten kilograms of cocaine. The finding that Richardson was reasonably capable of producing this amount of cocaine, because he would have produced it, *if he had the money,* is clearly erroneous on the present record. Therefore, the sentence of Richardson must be vacated and his case remanded for resentencing without any consideration of the conversations or negotiations between Richardson and Agent Aycock or the ten kilograms that were discussed.

The sentence of Taylor is affirmed, and the sentence of Richardson is vacated and his case is remanded for resentencing.

AFFIRMED AS TO TAYLOR; SENTENCE VACATED AND REMANDED FOR RESENTENCING AS TO RICHARDSON.

