**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin B. MAHONEY, Defendant–
Appellant.**

**No. 91–1090.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1992.

Decided July 22, 1992 *.

Opinion Aug. 11, 1992.

---

* This appeal was originally decided by unpub- lished order on July 22, 1992. *See* Circuit Rule

**140**

David E. Risley, John P. Schmidt (argued), Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Michael W. Ochoa (argued), Springfield, Ill., for defendant-appellant.

Before COFFEY and MANION, Circuit Judges, and SHABAZ, District Judge.**

COFFEY, Circuit Judge.

Kevin Mahoney was charged with one count of conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and entered a plea of guilty, reserving the right to challenge the amount of cocaine involved in the conspiracy at sentencing. The district court found he had conspired to distribute five kilograms (kilos) of cocaine, and sentenced him to 121 months in prison. We affirm.

## I. BACKGROUND

In May of 1989 Darrell Moore, an undercover informant, contacted Kevin Mahoney about purchasing one or two kilograms of cocaine. Mahoney said he could get Moore whatever he needed. The next day Moore introduced John Schaefer, an undercover D.E.A. agent, to Mahoney in Springfield, Illinois. Schaefer posed as a drug buyer with plenty of money who was interested in obtaining fairly large amounts of cocaine, and stated that Moore told him that Mahoney had a reliable supplier in Florida.[1] Schaefer said he wanted to buy five kilos, and proposed a two-stage transaction. Initially, Mahoney's Florida source would deliver one kilo to Schaefer in Springfield, where he would pay cash. Second, if things went well during the initial sale, Schaefer would purchase four more kilos from Mahoney's supplier in Florida. Mahoney thought it sounded like a good plan, and offered to obtain samples of cocaine for Schaefer's inspection. As they continued talking during this, their first meeting, Schaefer tried to make sure that Mahoney's source could produce enough cocaine, and the following exchange occurred:

[SCHAEFER]: Okay. And I'll pay the COD. I mean, I'll pay for that ki [the

---

53. The court, on its own motion, has decided to issue the decision as an opinion.

** Judge Shabaz, of the Western District of Wisconsin, is sitting by designation.

1. Neither the parties nor the transcript of the taped conversations between Schaefer and Mahoney state where in Florida Mahoney's supplier lived.

first kilogram of cocaine from Florida], COD. So, we're talkin', probably, in the neighborhood of 18 or 19 grand delivered here. One.

[MAHONEY]: Right.

[SCHAEFER]: If we're gonna do a five [kilogram deal]. You'll take two and I take three. You're sure these people have no problem comin' up with that?

[MAHONEY]: Positive.

Defendant–Appellant's App., at 18. The statement "You'll take two and I take three" referred to Schaefer and Mahoney's plan to divide the five kilos for sale in different parts of the state. Schaefer promised to pay for all five kilos, loaning Mahoney the purchase price until he could sell his share of the drugs and repay him. Mahoney later introduced Schaefer to his supplier, Dana Holland, over the phone. Holland, who lived in Florida, was visiting relatives in Springfield and spoke with Schaefer from Mahoney's home. Schaefer and Holland talked at some length about the logistics of the deal, and Schaefer made it clear that he wanted to buy a five-kilo package, which he and Mahoney would divide and sell to their respective customers.[2]

Before the deal could be consummated, law enforcement officers in Springfield, Illinois arrested Mahoney, who was subsequently charged with one count of conspiring to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mahoney pled guilty to this offense and reserved his right to challenge the amount of cocaine involved. He made his formal challenge to the amount of cocaine at the sentencing hearing, objecting to paragraph 17 of the Presentence Report, which stated that he had agreed to sell five kilos of cocaine, and he argued that he should only be held liable for two kilograms at the most. Relying on Mahoney's use of the word "positive" in the quoted colloquy, the court rejected Mahoney's argument, finding that he had the intent as well as the ability to come up with five kilos to sell to Schaefer. The court noted that Mahoney usually said "uh huh"

when agreeing with Schaefer, so that when he said he was "positive" his ally could produce five kilos it was unusual and noticeable, and this convinced the court that Mahoney's supplier was able to produce the drugs. In addition, Mahoney had advised the agents at the time of his arrest that Holland had agreed not only to the proposed sale but also promised to make arrangements to obtain the full five kilos in Florida. Though Mahoney later recanted his statement, saying he had lied about Holland's statement in order to secure his own release from custody, the court found that Mahoney's testimony was untrustworthy, as he had previously lied to the government when it was to his advantage.

The court accepted Mahoney's guilty plea to one count of conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Applying the Sentencing Guidelines, the district court found that Mahoney belonged in Criminal History Category I because he had neither a juvenile nor an adult criminal record. The court then found that Mahoney's intent to sell five kilos gave him a Base Offense Level of 32, exposing him to 121 to 151 months in prison. The judge imposed the minimum sentence available, 121 months.

## II. ISSUE

The sole issue on appeal is whether the district court properly found that Mahoney had the intent and ability to sell five kilos of cocaine, in spite of his claim that he only had the intent and ability to sell two kilos.

## III. DISCUSSION

 The quantity of drugs involved in an offense is a question of fact, reviewed for clear error. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990). In determining the amount of drugs involved for sentencing purposes, district courts may rely on Application Note 1 to § 2D1.4 of the Sentencing Guidelines, which provides in relevant part:

---

**2.** Schaefer recorded this conversation, as he had all of his conversations with Mahoney, on audio tape.

If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. *However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount it finds the defendant did not intend to produce and was not reasonably capable of producing.*

U.S.S.G., § 2D1.4, Application Note 1 (emphasis added). Mahoney argues that the italicized portion of the Note should apply in this situation as he had neither the intent nor the ability to produce five kilograms of cocaine.

The "lack of ability" argument is unpersuasive. Relying on *United States v. Richardson*, 939 F.2d 135 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 942, 117 L.Ed.2d 112 (1992), Mahoney maintains that he lacked the funds to complete a five-kilogram deal, and thus should not be held responsible for that amount. In *Richardson* the defendant arranged to sell ten kilograms of cocaine to an undercover officer. He later claimed that it was unlikely that he would have been capable of producing the negotiated amount, because at the time of the negotiations it would have been impossible for him to raise the money to buy ten kilograms to sell to the officer. The Fourth Circuit agreed, holding that the defendant should not have been sentenced for all ten kilograms because "There is nothing in the record to show how Richardson could have raised $150,000 or any substantial amount of money, and without the money he was not 'reasonably capable' of producing any cocaine." *Id.* at 143. In the case at bar, however, Agent Schaefer had promised to finance the entire deal—Mahoney didn't have to put up a dime. Moreover, Mahoney did not, like the defendant in *Richardson*, have to buy the drugs from someone before he could sell them to Schaefer; he simply had to perform his role in facilitating the deal. Mahoney was merely the middleman or conduit, putting a

buyer in touch with his supplier, and therefore his poverty or lack of it was irrelevant to the execution of the planned sale. Thus, *Richardson* is distinguishable; Mahoney didn't need money to accomplish the sale, he just needed Holland to get the drugs.

Mahoney also claims that he lacked the means to complete the sale because he did not have sufficient collateral to give Schaefer while he (Mahoney) travelled to Florida to pick up the drugs and transport them back to Springfield. Schaefer told Mahoney that if he gave him money to buy the cocaine in Florida, Mahoney would have to leave some collateral with him. Mahoney now claims that since he did not have $85,000 (the cost of the five kilograms) in assets to put up as collateral, he was incapable of completing a deal of that size. But Mahoney did not have to come up with $85,000 worth of collateral. The discussions concerning collateral took place when Schaefer was thinking about giving Mahoney some money that he could take to Florida to use in obtaining merely a quarter-kilo sample. A quarter kilogram cost only $3,500, thus Mahoney did not have to put up $85,000 in collateral, but would only have to come up with something like $3,500. At that time Mahoney advised Schaefer that he could find sufficient cash to use as collateral for this initial transaction if necessary.

> [SCHAEFER]: ... As long as you give me that collateral, as long as you left me with somethin' here—
>
> [MAHONEY]: Well, I gotta pair of Klipsche speakers. They're worth 4500 bucks.
>
> [SCHAEFER]: Yeh [sic], but I can't.
>
> [MAHONEY]: I know what you mean. I got cash somewhere here, some way, somehow.

Defendant–Appellant's App., at 49. Thus, by his own words, Mahoney was reasonably capable of completing the sample transaction. But even if he had no assets at all, it is questionable whether Mahoney's ability to come up with the collateral is even relevant. Application Note 1 to Guideline § 2D1.4 stops short of directing courts to examine whether the defendant

was capable of fulfilling every request of the buyer or seller, regardless of whether it went to the core of the transaction; it simply asks whether the defendant was reasonably capable of producing the negotiated amount.

Mahoney's alternative argument is that he lacked the intent to sell five kilograms because the parties never finalized the arrangements for the deal and continued negotiating until the arrest. Specifically, he claims that the issues of price and collateral remained open and, since there was never a solid agreement to buy and sell five kilos, he is not accountable for that amount. Though he does not cite it, *United States v. Ruiz*, 932 F.2d 1174 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991), could arguably support Mahoney's claim. In *Ruiz* the defendant conspired to sell two kilos of cocaine, but bragged that he could get ten kilos if the buyer so desired. We held that the sentence should have been based on but two kilos, not ten, because the evidence failed to demonstrate that the conspirators really had the requisite intent, as well as the network, to sell ten kilos: there were no buyers for that amount, no price had been set or discussed for that amount, and there was no evidence the defendant actually had access to that amount of cocaine. *Id.* at 1184. Thus, Mahoney is correct that, in certain instances, the lack of a firm agreement can be used to support a defendant's claim that he should not be held responsible for an amount of drugs merely mentioned in passing during the negotiation of another deal. For example, it is conceivable that a defendant would not be held accountable for an amount of drugs where there has never been a definite, serious offer to buy or sell that amount. *Id.; see United States v. Cea*, 963 F.2d 1027, 1031 (7th Cir.1992) ("The purpose of [Application Note 1 to § 2D1.4] is to prevent a defendant from being sentenced on the basis of idle boasts or braggadocio rather than for the amount of contraband he actually intended to produce or buy and was reasonably able to produce or buy.")

In this instance, however, there is ample evidence of the defendant's ability and intent to produce the full five kilos. Here there was a buyer (Schaefer) who had expressed a clear and definite desire to purchase five kilos, and a seller (Mahoney) who stated that he was "positive" his supplier could come up with that amount. Also, price had been specifically discussed, both as to the initial one-kilo delivery and the follow-up four-kilo sale. Defendant–Appellant's App., at 18 (discussing the COD price for first kilo and the market rate for subsequent kilos), and at 39, 45, 47 (general price discussions). Moreover, the parties thoroughly discussed options for delivery and payment, never mentioning any amount smaller than five kilos except as to samples or the one-kilo starter transaction. This is analogous to *Cea*, where we rejected the defendant's argument that he should not be sentenced for the amount of drugs negotiated because certain points of the transaction were never agreed upon. The key factor was that the defendant clearly had the intent and ability to consummate the sale.

> [Cea's] intent to [buy ten kilograms of cocaine] is demonstrated by his very specific negotiations as to price and amount, carried out over a recorded series of phone calls and meetings.... In other words, Cea was not shooting the breeze with the agents or randomly proposing hypothetical future transactions; he was dead serious about buying and distributing ten kilograms of cocaine and, through Quinto [his co-conspirator], had the means to do it.

*Cea*, 963 F.2d at 1031.

### IV. CONCLUSION

We agree with the trial court's decision that the evidence here supports a finding that Mahoney had both the intent and ability to sell and deliver five kilos of cocaine, and we thus AFFIRM the sentence imposed.