43 F.3d 1469
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Courtney Solomon McKENZIE, a/k/a Roger Ricardo McKenzie,
a/k/a Shawn McKenzie, a/k/a Shawnee, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pepito N. COWIE, a/k/a Mike Thompson, a/k/a Peter,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo Victor COWIE, a/k/a Kevin D. Smith, a/k/a Kid,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Mark ST. HILL, a/k/a James, Defendant-Appellant.
 Nos. 93-5525, 93-5528, 93-5526, 93-5527.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 30, 1994.
Decided Nov. 17, 1994.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-92-228-G)
 Michael W. Patrick, Haywood, Denny, Miller, Johnson, Sessoms & Patrick, Chapel Hill, N.C.; John Stuart Bruce, Federal Public Defender's Office, Greensboro, N.C.; Keith Eric Golden, Golden, Meizlish & Elwood Co., L.P.A., Columbus, Ohio, for appellants.
 David Bernard Smith, Asst. U.S. Atty./Senior Litig. Counsel/OCDETF Atty., Greensboro, N.C., for appellee.
 On Brief; Terry Goodwin Harn, Chapel Hill, N.C., for appellant Ricardo Cowie. Walter C. Horton, Jr., U.S. Atty., Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before MURNAGHAN and MOTZ, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Pepito Cowie, Ricardo Cowie, Richard St. Hill, and Courtney McKenzie appeal from their convictions and sentences for controlled substances violations. Finding no reversible error, we affirm.
 
 I.
 
 2
 On December 1, 1992, a four-count superseding indictment was returned against appellants and six co-defendants in the Middle District of North Carolina. One defendant, Gail Crawford, entered a guilty plea to one count of the indictment, after which the district court divided the remaining nine defendants into two groups for trial. The trial that resulted in this appeal involved appellants and codefendant, Michelle St. Hill, who was ultimately acquitted on all charges. All four appellants were convicted of one count of conspiring to possess with intent to distribute, and conspiring to distribute, cocaine base; Pepito Cowie, Ricardo Cowie, and Richard St. Hill were also convicted of two counts of possessing with intent to distribute cocaine base, and aiding and abetting in the same;[1] and Richard St. Hill was charged and convicted of an additional count of possessing cocaine base with intent to distribute, and aiding and abetting in the same. The district court sentenced Pepito Cowie to 151 months imprisonment and five years supervised release; Ricardo Cowie to 151 months imprisonment and five years supervised release; Richard St. Hill to 324 months imprisonment and five years supervised release; and Courtney McKenzie to life imprisonment. This appeal followed.
 
 II.
 
 3
 Pepito Cowie and Ricardo Cowie first challenge the sufficiency of the evidence to support their convictions. The standard of review in evaluating the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). A jury verdict must be sustained if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). This standard requires us to construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced. Giunta, 925 F.2d at 764 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence may suffice to support a guilty verdict, United States v. George, 568 F.2d 1064, 1069 (4th Cir.1978), as may the uncorroborated testimony of an accomplice. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985).
 
 A.
 
 4
 Count One alleges that from early 1990 through December, 1992, appellants violated 21 U.S.C. Sec. 846 by conspiring to possess with intent to distribute, and conspiring to distribute, cocaine base in violation of 21 U.S.C. Sec. 841(a)(1). To sustain a conviction under Sec. 846, the government must prove beyond a reasonable doubt that: (1) a conspiracy existed; (2) the defendants had knowledge of the conspiracy; and (3) the defendants voluntarily joined the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992). The requisite proof of a conspiracy is often shown by circumstantial evidence, Giunta, 925 F.2d at 764, and can be inferred from the totality of the circumstances. United States v. Mabry, 953 F.2d 127, 130 (4th Cir.1991), cert. denied, 112 S.Ct. 1951 (1992). Knowledge and participation may also be shown by circumstantial evidence. United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir.), cert. denied, 484 U.S. 969 (1987).
 
 
 5
 A single conspiracy exists when there is "one general business venture" or "one overall agreement." United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988). A conspiracy need not have a "discrete, identifiable organizational structure" and can be linked merely by a "mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir.1993), cert. denied, 114 S.Ct. 1850 (1994). Once a conspiracy has been established, it is only necessary to show a "slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). That the defendant may have played a minor role in the overall conspiracy is irrelevant. Id. It is not necessary that a conspirator know the identities of his co-conspirators or the exact roles they played in the conspiracy or have full knowledge of all the objects and purposes of the conspiracy. Mabry, 953 F.2d at 130. There need only be a showing that the defendant knew of the conspiracy's purpose and took some action indicating participation. United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984), cert. denied, 469 U.S. 1105 (1985).
 
 
 6
 Viewed in the light most favorable to the government, the evidence adduced at trial was sufficient to support the convictions of Pepito Cowie and Ricardo Cowie on Count One. Although there was no direct evidence of a conspiracy, there was sufficient circumstantial evidence to establish that from late 1990 to late 1992 the appellants and others agreed to transport crack cocaine from New York to North Carolina for street distribution. Moreover, there was evidence that Pepito and Ricardo Cowie not only knew about this conspiracy but actively participated in its furtherance. Government witnesses testified about a group of Jamaican nationals, including Pepito and Ricardo Cowie and the other appellants, who together transported and distributed crack cocaine. Pepito and Ricardo Cowie participated in drug sales at a particular residence in Greensboro, North Carolina with other defendants; both frequented certain locations in Greensboro reputed for drug activity. On at least one occasion Pepito Cowie was observed "cooking" or manufacturing crack cocaine that was ultimately distributed in North Carolina. Witnesses testified that they sold crack cocaine for Ricardo Cowie, and he was arrested while transporting crack cocaine from New York to Greensboro. Drawing all reasonable inferences in the government's favor, a rational jury could have found the requisite elements to convict Pepito and Ricardo Cowie of conspiring to possess with intent to distribute, and conspiring to distribute, cocaine base, as charged in Count One.
 
 B.
 
 7
 Counts Two and Three allege that on April 7, 1992, and April 13, 1992, respectively, Pepito and Ricardo Cowie possessed cocaine base with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and aided and abetted in the same, in violation of 18 U.S.C. Sec. 2. The government concedes that there was insufficient evidence to support the respective convictions on Counts Two and Three under 18 U.S.C. Sec. 2 but argues that the error was harmless because evidence of conspiratorial liability was sufficient to support the convictions under Pinkerton v. United States, 328 U.S. 640 (1946).
 
 
 8
 To sustain a conviction under 21 U.S.C. Sec. 841(a)(1), the government must show: (1) knowing and intentional possession of a controlled substance; (2) with the intent to distribute the substance. United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir.1993), cert. denied, 114 S.Ct. 2142 (1994). For purposes of determining the sufficiency of evidence for conspiratorial liability under Pinkerton, the government must establish that: (1) the substantive offenses were committed pursuant to the conspiracy; (2) the defendants were members of the conspiracy at the time the substantive offenses were committed; and (3) the commission of the substantive offenses were reasonably foreseeable in furtherance of the conspiracy. Pinkerton, 328 U.S. at 646-48; see also United States v. Irvin, 2 F.3d 72, 75 (4th Cir.1993). All conspirators are liable for reasonably foreseeable crimes committed by any member of the conspiracy in furtherance thereof. Pinkerton, 328 U.S. at 646-48; United States v. McManus, 23 F.3d 878, 883 (4th Cir.1994).
 
 
 9
 Again, viewed in the light most favorable to the government, the evidence supports the Cowies' convictions for the offenses alleged in Counts Two and Three. Count Two arises out of the April 7, 1992 arrest of Ricardo Cowie and Richard St. Hill at the Greensboro airport, where police seized approximately 12 grams of crack cocaine on St. Hill's person. The evidence showed that Ricardo Cowie and St.Hill were transporting crack cocaine from New York to North Carolina for street distribution pursuant to the overall conspiracy alleged in Count One; that both Pepito and Ricardo Cowie were members of the conspiracy at this time; and that the commission of this offense was reasonably foreseeable both to Ricardo Cowie, who was present at the scene when the drugs were seized, and to Pepito Cowie, who had been observed in New York manufacturing crack cocaine for distribution in North Carolina and who had participated in drug transactions with other co-conspirators in North Carolina.
 
 
 10
 Count Three stems from the April 13, 1992, arrest of Jacqueline Davis, Richard St. Hill's girlfriend, and the subsequent seizure of approximately 152 grams of crack cocaine from her apartment. The evidence showed that Davis had been storing drugs and money at her apartment for St. Hill in connection with the conspiracy alleged in Count One; that both Pepito and Ricardo Cowie were members of the conspiracy at this time; and that the commission of this offense was reasonably foreseeable both to Ricardo Cowie, who was arrested transporting crack cocaine from New York to North Carolina with Richard St. Hill and who directed Davis to sell some of the crack cocaine in her possession in order to raise bond money, and to Pepito Cowie, who manufactured and distributed crack cocaine on behalf of the conspiracy and who was observed in the parking lot of Davis' apartment complex the night of her arrest.
 
 
 11
 Moreover, the Cowies' contention that, in light of the government's concession that there was insufficient evidence to support these convictions based on aiding and abetting, the district court erred in instructing the jury on that theory, is meritless. Recognizing a jury's ability to discern between factually supported and unsupported theories of liability, the Supreme Court in Griffin v. United States, --- U.S. ----, ----, 112 S.Ct. 466, 474 (1991), held that although "it would generally be preferable for the court to give an instruction removing [the insufficiently supported alternative theory of liability] from the jury's consideration .... [t]he refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." See also United States v. Harris, 27 F.3d 111, 113 (4th Cir.1994) (verdict will stand if one of two alternative grounds for conviction is merely unsupported by sufficient evidence). Accordingly, where there was sufficient evidence to support the Cowies' convictions on a conspiratorial theory of liability under Pinkerton, the district court's instructions on aiding and abetting did not constitute reversible error.
 
 III.
 
 12
 Appellants contend that the district court erred in its calculations of drug quantities at sentencing. The standard of proof to be employed at sentencing is a preponderance of the evidence. United States v. Engleman, 916 F.2d 182, 184 (4th Cir.1990). The quantity of drugs involved is a factual issue reviewable under the clearly erroneous standard. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990); United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989), cert. denied, 493 U.S. 1062 (1990).
 
 
 13
 Pursuant to the United States Sentencing Guidelines (Guidelines), a court is entitled to approximate the quantities of controlled substance where there has been no seizure. U.S.S.G. Sec. 2D1.1, comment (n.12). A court may approximate pertinent drug quantities based on drug prices and financial evidence by converting seized cash to its drug quantity equivalent. United States v. Hicks, 948 F.2d 877, 879-80 (4th Cir.1991). Moreover, for sentencing purposes, a defendant is accountable for the acts of a co-conspirator where there is jointly undertaken criminal activity and the conduct of the coconspirator is reasonably foreseeable by the defendant. United States v. Richardson, 939 F.2d 135, 141 (4th Cir.), cert. denied, 112 S.Ct. 599 (1991). In Richardson we set the "outer limits of reasonable foreseeability" where a defendant introduced co-conspirators to each other and those co-conspirators continued to deal with one another for a substantial period of time after the defendant left the conspiracy. Id. However, we have since limited conspiratorial liability by requiring that drug quantities involved in a conspiracy fall within the "scope of the agreement" between the defendant and co-conspirators. Irvin, 2 F.3d at 75.
 
 A.
 
 14
 The district court attributed to Pepito Cowie 241 grams of crack cocaine for an offense level of 34. The court considered in its calculation approximately 77 grams of crack cocaine that Pepito "cooked" in New York; 12 grams of crack seized when Richard St. Hill and Ricardo Cowie were arrested on April 7, 1992; and 152 grams seized at Davis' apartment after her arrest on April 13, 1992. As explained in Part II.B., all of these instances of possession were reasonably foreseeable by Pepito Cowie, and all were in furtherance of the general conspiracy of which he was a member. Moreover, given the nature of the agreement between the members of this conspiracy, none of these amounts can be fairly deemed to be outside the scope of that agreement. The district court's conclusion in this regard was not clearly erroneous.
 
 B.
 
 15
 Although not entirely clear from the record, it appears the district court attributed identical quantities of crack cocaine to Ricardo Cowie. Because Ricardo Cowie failed to object to the drug quantities attributable to him, our review is limited to plain error. Fed.R.Crim.P. 52(b). In order to find plain error under Rule 52(b), we must (1) identify an error (2) that is plain, (3) affects substantial rights, and (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, --- U.S. ----, ----, 113 S.Ct. 1770, 1776 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)); United States v. Brewer, 1 F.3d 1430, 1434-35 (4th Cir.1993). Given Ricardo Cowie's direct involvement in the distribution of crack cocaine in North Carolina, the district court's calculation did not amount to error; indeed, the court could have properly assigned to Ricardo Cowie a substantially larger quantity in light of his documented distribution activities.
 
 C.
 
 16
 The district court attributed to Richard St. Hill 573.1 grams of crack cocaine for an offense level of 36, including 73.1 grams seized in October, 1992, and 500 grams that the court found St. Hill likely purchased with $10,000 that he and Davis took to New York in 1992. St. Hill contends that the finding that 500 grams was purchased with $10,000 was erroneous in light of evidence of crack cocaine prices presented over the course of the trial. However, the only evidence presented at sentencing as to the market price for crack cocaine substantiated this finding, and St. Hill did not object at sentencing to this evidence. The district court's calculation with respect to St. Hill was therefore not clearly erroneous.
 
 D.
 
 17
 Finally, the district court attributed to Courtney McKenzie 1,647.9 grams of cocaine base for an offense level of 38. Of this amount, McKenzie specifically objects to the 75.9 grams that Pepito Cowie "cooked" in New York with Evroy Chin, a/k/a "G," who distributed for Courtney McKenzie on a regular basis, and to 155.6 grams involved in two 1992 transactions between Courtney McKenzie's brother, Dexter McKenzie, and Christopher Phillips, an unindicted individual. The testimony of several government witnesses tied Courtney McKenzie to his brother's drug activities on numerous occasions. Again, these transactions were reasonably foreseeable to Courtney McKenzie and were in furtherance of the conspiracy of which he was a member. Moreover, the amounts attributed to Courtney McKenzie in each instance were certainly within the scope of his agreement with his respective co-conspirators, and the district court's calculations are, therefore, not clearly erroneous.
 
 IV.
 
 18
 Appellants next contend that the district court erred in admitting hearsay statements of co-conspirators under Rule 801(d)(2)(E) of the Federal Rules of Evidence. The statement at issue was made by Evroy Chin ("G") and was introduced as evidence against Richard St. Hill through the testimony of Welson Junior Wilson, who dealt crack cocaine with Chin on a regular basis:
 
 
 19
 [O]ne day, at the store.... I think "G" had a package of [St. Hill's], and he was selling at the store. "G" had to leave, and he told me to finish selling it, if anybody comes to the store to sell it. And he said it was [St. Hill's] stash.
 
 
 20
 Rule 801(d)(2)(E) provides that "a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy" is not excludable as hearsay. Co-conspirator statements may be conditionally admitted by the trial court provided the requirements for admissibility are subsequently satisfied, without explanation by the trial court of its ruling. United States v. Blevins, 960 F.2d 1252, 1256 (4th Cir.1992). In order for such statements to be admitted, the government must establish by a preponderance of the independent evidence: (1) the existence of a conspiracy at the time the statement was made; (2) the defendant's participation in that conspiracy; and (3) that the statement was made in furtherance of the conspiracy. United States v. Goins, 11 F.3d 441, 442 (4th Cir.1993), cert. denied, 114 S.Ct. 2107 (1994). Under the independent evidence test, the district court may consider co-conspirators' statements and "subsequent events" in determining whether the government has established by a preponderance of the evidence that the co-conspirator was involved in a conspiracy with the defendant. Bourjaily v. United States, 483 U.S. 171, 179-81 (1987); see also United States v. Leavis, 853 F.2d 215, 219-20 (4th Cir.1988). Any findings of fact with respect to these questions are subject to a clearly erroneous standard of review, and a district court's decision to admit evidence under Rule 801(d)(2)(E) is reviewed for abuse of discretion. Blevins, 960 F.2d at 1255.
 
 
 21
 The statement here was admissible under Rule 801(d)(2)(E). The evidence at trial established an overall conspiracy between these and other defendants, and this statement concerning a specific sale was clearly in furtherance thereof. Although the district court did not make specific findings of fact on the record regarding the admissibility of the statement, such findings were unnecessary where, as here, the record establishes that the statement was "plainly admissible." Blevins, 960 F.2d at 1256.[2]
 
 V.
 
 22
 Courtney McKenzie contends that the district court abused its discretion in admitting evidence obtained through a search of his house. The determination that a defendant has voluntarily consented to a search is a finding of fact that will be upheld on appeal unless the finding is clearly erroneous. United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990). The burden rests with the government to prove that consent was "freely and intelligently given ..., uncontaminated by any duress or coercion, actual or implied." United States v. Morrow, 731 F.2d 233, 235-36 (4th Cir.), cert. denied, 467 U.S. 1230 (1984) (citations omitted); see also United States v. Locklear, 829 F.2d 1314, 1317 (4th Cir.1987). The voluntariness of a consent to search is determined from the totality of the circumstances. United States v. Poole, 718 F.2d 671, 674 (4th Cir.1983). Of course, once consent is withdrawn or its limits exceeded, the conduct of the searching officers "must be measured against the Fourth Amendment principles." United States v. McFarley, 991 F.2d 1188, 1191 (4th Cir.), cert. denied, 114 S.Ct. 393 (1993).
 
 
 23
 McKenzie conceded at his suppression hearing that he gave consent to the initial search of his residence. He claims that during the search he revoked that consent, thereby requiring the officers to secure a warrant. In light of McKenzie's initial consent and the officers' contrary testimony that McKenzie made no effort to stop the search in progress, the district court admitted the fruits of the search into evidence. The court's finding in this regard was based on an assessment of the respective witnesses' credibilities and was not clearly erroneous.
 
 VI.
 
 24
 Additionally, Richard St. Hill and Courtney McKenzie object to certain enhancements to their respective sentences. Pursuant to 18 U.S.C. Sec. 3742(e) and United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989), Guideline application issues involving mixed questions of law and fact are reviewed under a "due deference" standard of review. Where the application issue is primarily a factual one, an appellate court should apply the clearly erroneous standard. If "the question requires [the appellate court] to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then ... the question should be classified as one of law and reviewed de novo." Daughtrey, 874 F.2d at 217-18 (quoting United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc ), cert. denied, 469 U.S. 824 (1984)). In applying an enhancement, the trial court may rely on trial testimony, giving it such weight and reliability as may be deemed appropriate, in support of its findings. United States v. Bowman, 926 F.2d 380, 381 (4th Cir.1991).
 
 A.
 
 25
 St. Hill first argues that the district court erred in enhancing his sentence under Sec. 2D1.1(b)(1) of the Guidelines. The section provides for a two-level sentencing enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during commission of the offense. The enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1(b)(1), comment (n.3). The enhancement here for possession of a firearm is a factual issue subject to the clearly erroneous standard. Daughtrey, 874 F.2d at 218.
 
 
 26
 Davis testified at trial that she received a gun and a quantity of crack cocaine from St. Hill, with whom she was romantically involved, and that she stored these items together at her apartment at St. Hill's request. After St. Hill's arrest, she gave the gun and drugs to her friends for safekeeping; she later gave the gun to Barry Smith, an unindicted acquaintance of St. Hill. Although police failed to find the gun when they arrested Davis at her apartment, and St. Hill testified at sentencing that the gun actually belonged to Barry Smith, the evidence demonstrated that St. Hill had both actual and constructive possession of the gun during the course of the conspiracy. Accordingly, the district court's conclusion that the firearm was connected to St. Hill's distribution of crack cocaine was not clearly erroneous. See United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988) (commonsense recognition that drug dealing is a dangerous enterprise supported inference that a weapon carried by a drug distributor was used to facilitate his drug business).
 
 B.
 
 27
 McKenzie also contests the enhancement of his sentence under Sec. 2D1.1(b)(1) of the Guidelines for possession of a firearm. To establish constructive possession, the government must produce evidence showing "ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992).
 
 
 28
 At trial, evidence was adduced that on October 19, 1992, police seized a .38 caliber handgun from 4603 Vincent Street during the search described in Part V. McKenzie testified at sentencing that he was not living at the house at the time and that the gun was not his. Although the utility bills for the residence were in other people's names, the evidence established that McKenzie owned this residence and was present when the officers found the gun. No fingerprints were produced, nor were any drugs or cash found at the house, but Evroy Chin testified that he occasionally delivered drug money to this house at McKenzie's request.
 
 
 29
 The evidence sufficiently establishes that McKenzie owned and maintained access to the house and was thus in constructive possession of the contents therein, including the gun. Furthermore, the fact that drug proceeds were delivered to the house on occasion indicates that the house and the gun within it were connected to the distribution of crack cocaine. Accordingly, the district court's enhancement of McKenzie's sentence for possession of a firearm was not clearly erroneous.
 
 C.
 
 30
 St. Hill also contends that the district court erred in enhancing his sentence under Sec. 3B1.1(b) of the Guidelines. U.S.S.G. Sec. 3B1.1(b) provides for a three-level sentencing enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive...." The Commentary to Sec. 3B1.1(b) states:
 
 
 31
 In distinguishing a leadership role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 32
 U.S.S.G. Sec. 3B1.1(b), comment (n.4). The enhancement is proper where the evidence shows that a defendant controlled monies and drugs. United States v. Paz, 927 F.2d 176, 180 (4th Cir.1991). Review of an enhancement for the defendant's role in the conspiracy is under the clearly erroneous standard. 18 U.S.C. Sec. 3742(e); United States v. Arnoldt, 947 F.2d 1120, 1128 (4th Cir.1991), cert. denied, 112 S.Ct. 1666 (1992).
 
 
 33
 The evidence demonstrated that St. Hill managed substantial amounts of drugs and proceeds and recruited others to assist him in distribution. Davis testified that she stored large sums of money and crack cocaine at her apartment and that at St. Hill's direction she sold a quantity of St. Hill's drugs to Gail Crawford, an indicted coconspirator, after St. Hill was arrested in April, 1992. Davis also testified that St. Hill "cooked" crack cocaine in New York and sold it through other people in North Carolina. Chin testified that he also sold crack for St. Hill in 1991. Accordingly, the district court's three-level enhancement for St. Hill's managerial role in the conspiracy was not clearly erroneous.
 
 D.
 
 34
 McKenzie argues that the district court erred in enhancing his sentence under Sec. 3B1.1(a) of the Guidelines. U.S.S.G. Sec. 3B1.1(a) provides for a four-level sentencing enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." Enhancements for a defendant's leadership role in a conspiracy have been applied where the defendant recruited another individual to accompany him on a drug purchasing trip, stored drugs and cash in his room, claimed a larger percentage of trafficking proceeds, and exercised authority over co-conspirators in the distribution of drugs, see United States v. Smith, 914 F.2d 565, 570 (4th Cir.), cert. denied, 111 S.Ct. 999 (1990), and where the defendant "controlled the money, drug products and residences where the drug trafficking was performed." Paz, 927 F.2d at 180.
 
 
 35
 Significantly, although the probation officer in this case recommended a four-level enhancement for McKenzie's leadership role in this conspiracy, it appears that the district court actually imposed only a three-level enhancement at sentencing. The court calculated McKenzie's total offense level to be 45: a base offense level of 38 for drug quantity, along with a two-level enhancement for obstruction of justice, a two-level enhancement for gun possession, and thus only a three-level enhancement for offense role. Although there may not have been sufficient evidence here to support a leadership role enhancement, a finding that McKenzie acted in a supervisory or managerial role in this conspiracy was clearly warranted in light of the testimony of both Chin and Wilson that they sold crack cocaine for McKenzie on numerous occasions. The district court's enhancement in this regard was therefore not clearly erroneous.
 
 E.
 
 36
 Finally, McKenzie contends that the district court erred in enhancing his sentence under Sec. 3C1.1 of the Guidelines. U.S.S.G. Sec. 3C1.1 is applicable "to defendants who engage in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding." United States v. Ashers, 968 F.2d 411, 413 (4th Cir.1992) (citations omitted). Providing materially false information to judicial officials or law enforcement officers is sufficient to justify the enhancement. U.S.S.G. Sec. 3C1.1, comment (nn. 3(f) and (g)); United States v. Romulus, 949 F.2d 713, 717 (4th Cir.1991). The use of a false name at arrest and in initial judicial proceedings has been held to be material for purposes of obstruction. See United States v. Saintil, 910 F.2d 1231, 1233 (4th Cir.1990). However, the Commentary to Sec. 3C1.1 specifies the types of conduct that, absent a separate conviction for such conduct, do not otherwise warrant application of this enhancement:
 
 
 37
 providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense.
 
 
 38
 U.S.S.G. Sec. 3C1.1, comment (n.4(a)). Appellate review of an adjustment for obstruction of justice is under the clearly erroneous standard. Saintil, 910 F.2d at 1233.
 
 
 39
 Although there is evidence that McKenzie gave a wrong first name to officers upon his arrest, there was no evidence that this conduct posed a significant hindrance to the investigation or prosecution of this case. The district court's two-level enhancement of McKenzie's sentence was therefore clearly erroneous. However, even with a two-level reduction, McKenzie's offense level would still be 43, the maximum under the Guidelines mandating life imprisonment. Accordingly, the error is harmless. See United States v. Cavasos, 915 F.2d 474, 476 (9th Cir.1990) (harmless error where guideline range would remain unchanged); United States v. Rivera, 879 F.2d 1247, 1254 (5th Cir.1989) (same).
 
 AFFIRMED
 
 
 [1]
 Upon motion under Fed.R.Crim.P. 29, the district court dismissed these two counts as to Courtney McKenzie for lack of sufficient evidence
 
 
 [2]
 In any event, any error was harmless where there was sufficient evidence to support St. Hill's conviction otherwise