**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alfonso GARCIA, also known as Jose
L. Garcia, also known as Quata,
Defendant–Appellant.**

**No. 94–3781.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1995.

Decided Nov. 3, 1995.

---

Barry Rand Elden, Chief of Appeals, Colleen Coughlin (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Neil H. Cohen, Adam J. Brenner (argued), Chicago, IL, for Defendant–Appellant.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Alfonso Garcia entered a guilty plea on one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). He now appeals two sentencing determinations. For the reasons set forth in the following opinion, we affirm the judgment of the district court. We also refer a professional disciplinary matter regarding Mr. Garcia's trial defense counsel to the district court for further investigation.

## I

## BACKGROUND

A. *Facts*

On August 31, 1993, defendant Alfonso Garcia supplied two kilograms of cocaine base to Luis Orozco in Chicago, under the arrangement that Orozco would pay for those two kilos after he sold them to his customer. Later that day, Orozco was arrested when he made the delivery in Joliet to a person who was cooperating with the government. Orozco then agreed to cooperate with the government by contacting his source for the cocaine base. That same evening, he contacted Mr. Garcia, by pager and by telephone, to arrange for an additional supply of cocaine. During those tape-recorded telephone conversations, Orozco told Mr. Garcia that his customer was pleased with the two kilos of cocaine Orozco had just delivered, and wanted more. Mr. Garcia assured him that there was quite a bit more cocaine, but that he could not get it that night; however, Mr. Garcia also insisted that he needed payment first for the two kilograms he had

already supplied to Orozco. They agreed to meet the next day so that Orozco could pay Mr. Garcia for the two fronted kilograms and pick up four more.

The next morning, after more paging and telephoning, Mr. Garcia informed Orozco that he had "it," and they met at Denny's Restaurant in Bolingbrook. Once Mr. Garcia arrived at the restaurant, however, he advised Orozco that he did not have "it" with him, but could get "it" after he was paid for the first two kilograms, and could deliver "it" within two hours. Undercover police officer Juan DeLeon, posing as Orozco's buyer and wearing a recording device, showed his anger that Mr. Garcia had not brought the cocaine. However, he reluctantly agreed to pay for the prior delivery of cocaine and to wait for the four kilograms promised by Mr. Garcia. Then Officer DeLeon and Mr. Garcia went out to the parking lot, where DeLeon handed Mr. Garcia a bag containing $45,000 for the two kilos. After he accepted the payment and began to walk away with the bag of money, Mr. Garcia was arrested. His car was then searched; hidden in one of the electronic trap compartments in the car, which Orozco knew how to open, was $2,500. Although the compartments were capable of transporting approximately twenty kilos of cocaine, none was discovered hidden at that time.

After his arrest on September 1, 1993, Alfonso Garcia identified himself to the police and pretrial services personnel as "Jose" Garcia and gave a false date of birth and social security number, those of his brother Jose, who had no criminal record. At the initial appearance before the magistrate judge that same day, Mr. Garcia's attorney answered the clerk's call identifying the case as "United States of America versus Jose Garcia" by introducing himself to the court as appearing "on behalf of Mr. Garcia." That attorney filed his formal appearance on behalf of "Jose" Garcia the next day, and remained Mr. Garcia's attorney in all district court proceedings through sentencing.[1]

---

1. The same attorney had also represented Mr. Garcia in 1988 in federal court in the Western District of Texas. In that case Mr. Garcia was

convicted of bringing illegal aliens into the United States; he was sentenced to seven months of

The magistrate judge conducted a preliminary examination and detention hearing on September 7, 1993. The recommendation of the pretrial services officer, based on the clean record of "Jose" Garcia, was that the defendant be released on bond.[2] Mr. Garcia's lawyer argued to the court that there was no risk of flight or danger to the community because "there's no indication from the report that this defendant has a previous criminal history. This appears from the report to be his first arrest."[3] R. 76 at 48–49. Despite these recommendations, the magistrate judge found that there was a risk of flight and possible danger to the community, and therefore detained "Jose" Garcia. Officers learned Mr. Garcia's actual identity one week later.[4]

A grand jury returned a two-count indictment against Mr. Garcia on September 30, 1993. It charged him with distributing two kilograms of cocaine and with possessing with intent to distribute four kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). On May 27, 1994, Mr. Garcia pleaded guilty to count one of the indictment. In the plea agreement he admitted distributing two kilograms of cocaine on August 31, 1993, and supplying another kilogram of cocaine to Orozco on a previous date. However, Mr. Garcia and the government disagreed concerning Mr. Garcia's accountability for the distribution of the four kilograms of cocaine Mr. Garcia told undercover officer DeLeon he could deliver in two hours, and four additional kilograms that Orozco stated Mr. Garcia

sold him over the course of approximately eighteen months. In addition, the government requested an enhancement of Mr. Garcia's offense level under United States Sentencing Guideline (U.S.S.G.) § 3C1.1 because Mr. Garcia had provided false identifying information to arresting agents and to the magistrate judge. A felony conviction, an outstanding federal warrant and two state warrants existed for his arrest under his true identification. The parties reserved the right to argue at sentencing whether the false information merited a § 3C1.1 obstruction of justice two-level enhancement, and whether § 1B1.3 relevant conduct included eight additional kilograms of cocaine: the four supplied to Orozco earlier and the four promised but not delivered.

## B. Sentencing Proceedings Before the District Court

At the sentencing hearing, the district court heard the testimony of Orozco and several other witnesses, reviewed the tape transcripts and photographs of Mr. Garcia's car, and considered the arguments of counsel. It then announced its decisions concerning the amount of relevant conduct to be included in Mr. Garcia's sentencing calculation.[5] It concluded that the transactions between Mr. Garcia and Orozco that had occurred over an eighteen-month period prior to August 31, 1993 did not qualify as relevant conduct. However, the court determined that the defendant fully intended to supply

imprisonment and three years of supervised release. R. 78 at 8–9.

2. Mr. Garcia explained in his brief that pretrial services offered to recommend his release on bond once a family member had verified the information in the pretrial services report. However, Mr. Garcia "discussed with defense counsel the possibility of being given an obstruction enhancement for misleading the court and determined not to call a member of his family to insist that he was in fact Jose." Blue Br. at 7. Mr. Garcia also stated that he remained silent during the detention proceedings, and therefore "did not go on record to either confirm nor [sic] deny the alias." Id.

3. Mr. Garcia's attorney was aware that this defendant, Alfonso Garcia, had a prior federal conviction. See supra note 1. In addition, the PSR reported that Mr. Garcia was released on June 19, 1989, from federal custody to a detainer

lodged by the Kane County, Illinois Sheriff's Department. Mr. Garcia posted bond and was released on the condition that he report to the United States Probation Office. Because he never appeared, a fugitive warrant was issued by the United States District Court for the Western District of Texas. R. 78 at 9. The record does not reflect whether Mr. Garcia's lawyer knew of that warrant.

4. Federal agents identified the defendant as Alfonso Garcia after they brought his photograph to the Carpentersville, Illinois police department. R. 78 at 3.

5. Mr. Garcia was sentenced on November 7, 1994. Our references to the Sentencing Guidelines are therefore to the 1994 version in effect at that time. 18 U.S.C. § 3553(a)(4).

the four kilograms for which Mr. Garcia negotiated with Orozco and undercover officer DeLeon on August 31. The court pointed out specific portions of the tape transcripts reflecting Mr. Garcia's intent to carry out a planned four-kilo transaction as soon as payment was available, and stated that it found Orozco's testimony believable and supported by other evidence. It reviewed the testimony of other government witnesses, all of whom the court found credible, and then concluded, "based on [Mr. Garcia's] statements, based on his prior actions, and based on the car, that he had the clear ability to provide the additional four kilograms within the context of the agreed transaction." R. 77 at 205. Therefore, the court held Mr. Garcia responsible for a total of seven kilograms of cocaine.

The court also determined that the false name and date of birth used by Mr. Garcia was materially false information, even if it did not result in a significant hindrance to the investigation or prosecution of this offense. It held that Mr. Garcia's provision of materially false information to the magistrate warranted a two-level enhancement for obstruction of justice under application note 3(f) of guideline § 3C1.1. Nevertheless, the court also granted a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and, in the end, established that the adjusted offense level was 31, the criminal history category III, and the guideline range 135 months to 168 months. The court then accepted defense counsel's request and sentenced Mr. Garcia at the lowest end of the guideline range, at 135 months.

## II

## DISCUSSION

A. *Obstruction of Justice: U.S.S.G. § 3C1.1*

▮▮▮ The first issue raised on appeal is whether Mr. Garcia's misrepresentation of

his identity to federal agents and to pretrial services merits a two-point enhancement of his sentence for obstruction of justice.[6] Because the sentencing court's determination that a defendant obstructed justice under § 3C1.1 is a finding of fact, *United States v. Brown*, 944 F.2d 1377, 1383 (7th Cir.1991), we review that decision under the clearly erroneous standard. *United States v. Dillard*, 43 F.3d 299, 308 (7th Cir.1994); *United States v. Wright*, 37 F.3d 358, 361 (7th Cir. 1994). However, we review the district court's interpretation of the sentencing guidelines de novo, giving due deference to its application of the guidelines to the facts. *United States v. Harrison*, 42 F.3d 427, 430 (7th Cir.1994).

We begin by considering the relevant guideline provision, § 3C1.1:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Application note 3 to this guideline offers "a non-exhaustive list of examples of the types of conduct to which this enhancement applies." The examples pertinent to this case are:

> (b) committing, suborning, or attempting to suborn perjury;
>
> (f) providing materially false information to a judge or magistrate;
>
> (g) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;
>
> (h) providing materially false information to a probation officer in respect to a presentence or other investigation for the court[.]

> (a) providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense[.]"

---

6. The district court found that the false information given by Mr. Garcia at his arrest did not significantly hinder the investigation of his offense. *See* U.S.S.G. § 3C1.1, comment. (n. 4(a)), which provides "a non-exhaustive list of examples of the types of conduct that, absent a separate count of conviction for such conduct, do not warrant application of this enhancement . . .:

In addition, application note 5 defines "material" information:

> 5. "Material" evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.

### 1.

■ Mr. Garcia concedes that he provided false identification to arresting agents and to the pretrial services officer compiling the information for the Pretrial Services Report ("PSR") prior to the detention hearing. He also declines to challenge the magistrate judge's finding that the reporting of a false name, date of birth, and social security number constitutes "materially false information."[7] Nevertheless, Mr. Garcia contends that the § 3C1.1 enhancement does not apply to his conduct. At the hearing before the magistrate judge, Mr. Garcia was silent; because he made no affirmative misrepresentations to the court, Mr. Garcia asserts, he did not commit perjury and thus did not obstruct justice.[8] *See* § 3C1.1 comment. (n. 3(b)).

The government takes a decidedly different view of Mr. Garcia's conduct. It points out that Mr. Garcia appeared twice before a magistrate judge as "Jose Garcia." His attorney apparently knew he was not Jose, but misled the court by asserting that it appeared from the PSR that he ("Jose") had no previous criminal history. The government suggests that Alfonso Garcia provided the name "Jose Garcia" knowing that his brother

Jose had no criminal history and hoping that the magistrate judge would release the defendant on bond in the belief that he had no criminal record. Had Mr. Garcia's ruse been successful through sentencing, the government further explains, he would have qualified for a criminal history category of I rather than of III. The government thus urges us to uphold the sentencing court's finding that Mr. Garcia's false identifying information was material and that there were clearly sufficient grounds to support a finding of obstruction of justice. *See United States v. Price,* 988 F.2d 712, 721 (7th Cir.1993) (holding that defendant's submission of a false name and false social security card to the court merited § 3C1.1 enhancement).

Mr. Garcia submits that *Price* is distinguishable because, in that case, the defendant made affirmative misrepresentations to the magistrate judge; here Mr. Garcia remained silent. Moreover, Mr. Garcia urges us to credit his "honorable" decision not to call family members to testify falsely by verifying his misrepresentation that he was "Jose."

Mr. Garcia's distinction is spurious. His appearance before the magistrate judge under the false identity of "Jose Garcia" is assuredly an affirmative misrepresentation. In addition, his decision to remain silent rather than to correct the false identity he created for himself is a material nondisclosure. In both circumstances the defendant successfully misled, for a time, the magistrate judge and the judicial investigation.[9]

---

**7.** Although he does not claim that his false identity was immaterial, Mr. Garcia makes the broad claim that, because his false information did not result in his release, his conduct does not merit an enhancement. This argument misses the point. As a general proposition, § 3C1.1 "enhancement is applicable not just to defendants who have actually obstructed justice but also to those who have attempted to do so." *United States v. Cotts,* 14 F.3d 300, 307 (7th Cir.1994) (finding enhancement proper under application note 3(i)); *see also United States v. Rogers,* 917 F.2d 165, 169 (5th Cir.1990) (explaining that § 3C1.1 covers attempted obstruction and that the brevity of the obstruction is not a relevant consideration to whether obstructive conduct occurred; upholding § 3C1.1 enhancement without reference to application note examples), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d

252 (1991), *overruled on other grounds by United States v. Lambert,* 984 F.2d 658 (5th Cir.1993) (en banc).

**8.** The government argues in a footnote that Mr. Garcia raises new arguments on appeal and therefore has waived the issue of § 3C1.1 applicability. We believe that Mr. Garcia raised the issue with sufficient specificity to avoid the application of waiver on appeal.

**9.** *See United States v. Mafanya,* 24 F.3d 412, 415 (2d Cir.1994) (determining that defendant's false identification and false statements were sufficient under note 3(f) to warrant the § 3C1.1 enhancement); *United States v. Gardiner,* 931 F.2d 33, 35 (10th Cir.1991) (upholding enhancement under note 3(f) for withholding of true identity); *United States v. Williams,* 897 F.2d 1034, 1041 (10th

We reject, as we did earlier in a case with similar circumstances, this attempt on Mr. Garcia's part to distinguish between material nondisclosure and material misrepresentation. *See United States v. Jones,* 983 F.2d 1425, 1432 (7th Cir.1993) (holding that defendant's deceptive withholding of aliases is the functional equivalent of furnishing affirmative misinformation that frustrates the investigative process).

### 2.

■ Mr. Garcia also asserts that he does not deserve an enhancement because he gave false identifying information for the PSR to a pretrial services officer rather than to a probation officer. It is true that application note 3(h) establishes use of a § 3C1.1 enhancement when the defendant provides materially false information "to a probation officer." *See* § 3C1.1 comment. (n. 3(h)). However, the crucial phrase in note 3(h) is that the materially false information is provided "in respect to a presentence *or other investigation for the court.*" *Id.* (emphasis added). A pretrial services report is just such an investigatory report. Moreover,

Cir.1990) (stating that, when a defendant gives false information during pretrial services interview, "the proper inquiry is whether [the defendant] provided false information to mislead the interviewer"; comparing this deception to deception of probation office or sentencing judge; upholding enhancement), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991); *see also United States v. Pereira–Munoz,* 59 F.3d 788, 792 (8th Cir.1995) (upholding district court's conclusion, based on note 3(h), that defendant's failure to provide a truthful identity hampered preparation of the PSR and precluded a criminal history determination, thus obstructing the administration of justice); *United States v. Benitez,* 34 F.3d 1489, 1497 (9th Cir.1994) (upholding enhancement because defendant's provision to pretrial services of false date and place of birth and failure to disclose an outstanding warrant were material and impeded investigation), *cert. denied,* —— U.S. ——, 115 S.Ct. 1268, 131 L.Ed.2d 146 (1995); *United States v. Mohammed,* 27 F.3d 815, 823 (2d Cir.) (affirming enhancement, under application note 3(h), based on defendant's failure to disclose his legal name during initial probation interview, as intentional attempt to conceal his arrest record), *cert. denied,* —— U.S. ——, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994).

*United States v. Johns,* 27 F.3d 31 (2d Cir. 1994), is not to the contrary. In that case, the

note 3 declares itself to be "a non-exhaustive list," and we therefore have upheld an obstruction of justice enhancement based on the defendant's false statements to a pretrial services officer. *United States v. Delgado,* 936 F.2d 303, 306 (7th Cir.1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992); *United States v. Ojo,* 916 F.2d 388, 392–93 (7th Cir.1990). Other courts also have treated falsehoods to either type of officer as warranting the enhancement. *See, e.g., United States v. Restrepo,* 53 F.3d 396, 397 (1st Cir.1995) (per curiam); *United States v. St. James,* 38 F.3d 987, 987 (8th Cir.1994); *United States v. Williams,* 897 F.2d 1034, 1040 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991).

Whether the officer gathering the information is a probation officer or a pretrial services officer, the critical fact is that the information given by the defendant is to be used by the court when making bail, release, and other pretrial or presentence determinations. If the identification given by the defendant is materially false—and a defendant's identity is indeed a material fact [10]—then it is clear

majority held that the defendant's silence with respect to his involvement with a coconspirator was a refusal to admit guilt, and the defendant's false statements were denials of guilt which fell into the exception to § 3C1.1: "A defendant's denial of guilt ... is not a basis for application of this provision." § 3C1.1 comment. (n. 1). *Id.* at 35; *but see id.* at 36–37 (Altimari, J., dissenting) (positing that a defendant who lies to a probation officer or other officer of the court about material matters is obstructing justice, even if his misstatements are phrased as denials of wrongdoing). Significantly, the majority explained that statements other than a denial of guilt, such as denial of past convictions, taken with the purpose of obstructing justice, does give rise to an obstruction of justice enhancement under § 3C1.1. *Id.* at 36. The circumstances in this case fall into the latter category; thus we believe that *Johns* is not in conflict with our decision to affirm the sentencing court's imposition of the § 3C1.1 enhancement.

**10.** Mr. Garcia does not dispute that his use of a false identity is a material fact or that, had he given the false alias to a probation officer, it would have warranted an obstruction enhancement. The case law consistently holds that identity is a material fact. *See, e.g., Pereira–Munoz,* 59 F.3d at 792; *Restrepo,* 53 F.3d at 397–98; *St. James,* 38 F.3d at 988.

that the defendant was providing materially false information for the use of a judge or magistrate judge, whether the conduit for that misinformation was a probation officer or a pretrial investigative officer. *See St. James,* 38 F.3d at 988 (determining that providing materially false information to the pretrial services officer is "very similar conduct" to providing it to a probation officer under application note 3(h)).

Because the list of examples in note 3 is not exhaustive, we conclude that a defendant's provision of materially false information during a pretrial investigation can merit the application of a § 3C1.1 enhancement, whether that information was given to a probation officer or pretrial services officer— particularly when, as occurred in this case, that misinformation was then passed on to the magistrate judge in the PSR with the recommendation that Mr. Garcia be released on bail. The district court did not err in determining that an enhancement for obstruction of justice was appropriate.

### 3.

Before we conclude our discussion of this enhancement, we must take note of what the record before us reveals about the conduct of Mr. Garcia's lawyer. The record indicates that the defense attorney knew of Mr. Garcia's false identification and prior record, and indeed had represented Mr. Garcia on earlier federal charges.[11] Yet the lawyer answered the motions call for "Jose" Garcia and stated to the magistrate judge that the defendant Jose Garcia "appeared to have" no criminal record. These actions suggest the need for disciplinary action by the court before which the attorney proffered the false information. At oral argument, counsel for the government stated that no steps had been taken to investigate this matter. We therefore refer this professional disciplinary matter to the district court. Because the conduct occurred before that court, which has inherent power to oversee the conduct of its officers, it is appropriate that the district court assume primary responsibility with respect to this matter.

---

11. *See supra* notes 1–3 and accompanying text.

### B. *U.S.S.G. §§ 1B1.3, 2D1.1, comment. (n. 12): Negotiated Amounts as Relevant Conduct*

When a sentencing court calculates a defendant's base offense level under the Guidelines, it considers types and quantities of drugs beyond those specified in the counts of conviction. Pursuant to § 1B1.3(a)(2), the court analyzes all of the defendant's acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." As part of that calculation, application note 12 of § 2D1.1 requires inclusion of "the weight under negotiation in an uncompleted distribution" if the court finds that the defendant intended to produce the drugs and was reasonably capable of producing the negotiated amount. In pertinent part, application note 12 provides:

> Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct). Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance....
>
> . . . . .
>
> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

Mr. Garcia claims that the sentencing court erred in its "relevant conduct" calculation. The court included the four kilograms of cocaine that Mr. Garcia negotiated to sell to Orozco and undercover officer DeLeon. It is Mr. Garcia's position on appeal that the court did not make specific findings concerning that negotiated, undelivered cocaine

quantity as required under application note 12 of the commentary to § 2D1.1.

### 1.

We review a district court's sentencing determinations with deference and uphold its decisions if the court "correctly applied the Guidelines to findings of fact that were not clearly erroneous." *United States v. Sykes*, 7 F.3d 1331, 1335 (7th Cir.1993) (citation omitted). The court's determination at issue here—that the uncharged but negotiated four kilos of cocaine constituted "relevant conduct" under U.S.S.G. § 1B1.3(a)(2)—is a finding of fact; we therefore shall not disturb that finding unless it is clearly erroneous. *United States v. Wilson*, 31 F.3d 510, 516 (7th Cir.1994); *United States v. Jean*, 25 F.3d 588, 598 (7th Cir.1994). A finding of fact is clearly erroneous when, even if there is some evidence to support the finding, we who review the entire evidence are left "with the definite and firm conviction that a mistake has been committed." *United States v. Ferguson*, 35 F.3d 327, 333 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1832, 131 L.Ed.2d 752 (1995) (citation omitted); *Sykes,* 7 F.3d at 1335.

We note that the defendant has not taken issue with the court's findings that the negotiated transaction is part of "the same course of conduct [or] common scheme or plan as the offense of conviction." R. 77 at 206. The only challenges Mr. Garcia raises to the district court's relevant conduct determination are those arising from application note 12 to § 2D1.1.

### 2.

Mr. Garcia first submits that note 12 to § 2D1.1 requires a district court to make specific findings concerning a defendant's intent and capability to produce the undelivered cocaine. With respect to this submission, we begin by noting that the government had the burden of proving, by a preponderance of the evidence, the quantity of drugs and the defendant's intent and capability to produce the additional cocaine. *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir.1994); *United States v. Ruiz*, 932 F.2d 1174, 1183–84 (7th Cir.), *cert. denied,*

502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991). A defendant cannot be sentenced on amounts he did not intend to sell and was not reasonably able to obtain for the sale. *Jean,* 25 F.3d at 598. However, the district court need find only that the defendant was *reasonably* capable of producing the negotiated amount. *Id.* at 599 (citing *United States v. Mahoney,* 972 F.2d 139, 142–43 (7th Cir. 1992)).

Upon review of the record, we conclude that the district court did not clearly err in this relevant conduct determination. The court properly made explicit factual findings with respect to the evidence proffered by the government. It stated that the evidence had established Mr. Garcia's intent and ability to deliver the additional kilos. Referring specifically to the transcripts of tape recorded conversations held by Mr. Garcia with Orozco or DeLeon, for example, the court found that Mr. Garcia clearly intended to sell the additional four kilos and was capable of producing them, but "was concerned about getting the money for the two kilos that he had fronted before he was going to produce the other four kilos to complete the transaction." R. 77 at 204–05. The court noted that, during his several conversations with Orozco prior to the meeting at Denny's Restaurant, Mr. Garcia had firmly agreed to a four-kilo transaction and had repeatedly expressed a commitment to deliver the agreed-upon quantity. Such dealings demonstrated the seriousness of his intent. *See United States v. Cea,* 963 F.2d 1027, 1031 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992). The court stated that it found credible the testimony of Orozco and of other government witnesses and that it believed Mr. Garcia when he promised delivery of the four kilos. The court did not clearly err by taking Mr. Garcia at his word, *Jean,* 25 F.3d at 598–99, or by finding credible the other witnesses. *Ferguson,* 35 F.3d at 333. We conclude that the sentencing court did not fail to make findings concerning Mr. Garcia's intent to sell four kilograms of cocaine and reasonable capability to complete the negotiations for selling that amount.

### 3.

■ Mr. Garcia also submits that the court did not distinguish between true negotiations and his braggadocio or idle talk about his ability to produce additional quantities of drugs. He asserts that the only evidence of his intent or capability to produce additional cocaine is his own affirmation that he would return with the four kilograms.

■ We have generally held that negotiated, undelivered drugs should be counted in determining the base offense level, as long as there were true negotiations and not idle talk. *United States v. Jewel,* 947 F.2d 224, 234 (7th Cir.1991). Application note 12 to § 2D1.1 is meant to prevent a defendant from being sentenced on the basis of his "braggadocio rather than for the amount of contraband he actually intended to produce ... and was reasonably able to produce." *United States v. Cotts,* 14 F.3d 300, 307 (7th Cir.1994) (quoting *United States v. Cea,* 963 F.2d 1027, 1031 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992)). We have not hesitated in remanding cases in which the district court failed to clarify which incomplete transactions were actually negotiated and which were not. *See Jewel,* 947 F.2d at 235 (remanding for specific findings); *Ruiz,* 932 F.2d at 1184 (remanding for resentencing on the basis that "an offhand statement ... that amounts to no more than braggadocio is insufficient to establish that those quantities were 'under negotiation' ").

In this case, however, the evidence presented by the government demonstrated that Mr. Garcia's promises of providing the four kilograms were not off-hand statements or "puffery." Mr. Garcia had already delivered two kilograms and had admitted supplying another kilogram to Orozco earlier. He and Orozco had a continuing relationship, one in which Mr. Garcia trusted Orozco enough to front the cocaine to him. They had made numerous telephone calls planning how to transfer the additional cocaine. Three times Mr. Garcia agreed to return with the four kilos; he even stated to the undercover officer, "I won't fail you." R. 80, Ex. 2 at 10. The difficulties Mr. Garcia had encountered in producing the four kilos immediately—the lateness of the hour, the distance to Mr. Garcia's home where the cocaine was stored, the need to have the payment for the fronted cocaine first—were reasonable and did not indicate that Mr. Garcia was merely bragging about the four kilos. The court concluded that Mr. Garcia "clearly had the means to produce those four kilograms within the context of the agreed transaction" based on the defendant's own statements, his prior actions, and the configuration of his car, which provided the means for transporting the four kilograms within a short period. R. 77 at 205. The government's burden was a preponderance of the evidence; the court stated that the government successfully met that burden and proved Mr. Garcia's intent and capability to deliver the negotiated amount. Mr. Garcia has offered us no explanation which would reasonably indicate his "braggadocio" or lack of ability to complete the negotiations. We conclude that the sentencing court did not err by believing that Mr. Garcia could deliver what he had promised, *see Jean,* 25 F.3d at 599, and by holding him accountable for those four kilos.

### 4.

■ Mr. Garcia's final claim is that the trial court failed to consider whether he took a "substantial step" toward commission of attempted delivery of the four kilograms of cocaine. He claims that, prior to his arrest, there was no objective manifestation of his intent or ability to deliver more cocaine. According to Mr. Garcia, the record indicated that he wanted payment for only the cocaine that was delivered and that he did not bring any additional cocaine with him, despite the fact that he could have hidden it in his car.

■ This argument is completely without merit. In the first place, it was not raised in the district court, and thus has been waived on appeal. Secondly, the "substantial step" element does not apply here; the sentencing court's test for holding a defendant responsible for an undelivered amount of drugs is his intent and ability to produce the quantity, not his "substantial step." Mr. Garcia has raised no issue or fact sufficient to overturn the sentencing court's determination. The court's findings of fact were not clearly erro-

neous, and its sentence was a proper application of the sentencing guidelines to those facts.

## Conclusion

For the aforementioned reasons, the sentence of the district court is affirmed.

AFFIRMED.