86 F.3d 1158
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin CONWAY, Defendant-Appellant.
 No. 95-2261.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 12, 1995.
Decided May 15, 1996.
 
 Before POSNER, Chief Judge, and ESCHBACH and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 In this appeal, Melvin Conway challenges the district court's calculation of the amount of drugs on which his sentence for possession with intent to distribute cocaine was based. The district court decided to attribute to him seven kilograms that were the subject of a discussion that he had with a government informant about a potential deal, but that he never bought. Conway argues that because he and his partners lacked the ability to pay for the additional cocaine, he should not be held accountable for it. We conclude that the district court did not commit clear error in its finding, and we therefore affirm the sentence.
 
 
 2
 During a one-month period in the spring of 1992, Conway purchased ten kilograms of cocaine from Mark Davino at prices ranging from $24,000 to $27,000 per kilogram. In July 1992, he arranged to purchase an additional two kilos from Davino, but the deal fell through when one of Conway's associates shot Davino immediately before payment. Davino, who survived the shooting, was arrested two months later for possession of cocaine and shortly thereafter became a cooperating informant for the government.
 
 
 3
 Conway began dealing cocaine and heroin in small quantities in July 1992, along with a neighbor, Eric Rowe, and later, a larger drug dealer named Andre Fox. In February 1993, Davino (by then a CI) contacted Conway about the possibility of purchasing cocaine. Conway told Davino that he had a buyer for cocaine. Conway then relayed this information to Rowe, who promptly called Fox to see if he was interested in purchasing kilogram quantities of cocaine. Fox said yes. He told Rowe that he wanted to buy cocaine in 10-kilo quantities, but that he preferred to start out with smaller amounts to test the drug's quality. Fox and Rowe settled on a total of three kilos for the first buy. Rowe filled Conway in on the details, including Fox's desire to deal in 10-kilo lots.
 
 
 4
 On March 5, 1993, Conway and Davino agreed on a sale for two kilograms of cocaine at $24,000 per kilogram. Conway told Davino that he was interested in setting up a series of daily purchases of two kilograms of cocaine. Shortly before the deal, Conway paged Davino and told him that he wanted to buy three, rather than two, kilos for the initial transaction. Later that day, Conway and Rowe met with Davino and an undercover Oak Park police officer, who was posing as Davino's bodyguard, to carry out the transaction. The parties then haggled over what would happen first: delivery of the cocaine, or delivery of the money. Eventually, after contacting Fox, Rowe agreed to produce the money first and left to get the purchase price of $72,000.
 
 
 5
 While they were waiting for Rowe to return, Conway and Davino discussed potential future deals. Conway told Davino that he needed money and that he was "going to do what [he could] to make ... some." Conway also said that he could "move a lot" of cocaine. In the following recorded exchange, he clearly offered to purchase three additional kilos the following day, and he acknowledged the buyer's interest in a total of ten kilos:
 
 
 6
 Conway: Ah, we do the same tomorrow, I guess. If I got or I had the money.
 
 
 7
 Davino: Two or three?
 
 
 8
 Conway: We'll do three, they can move them.
 
 
 9
 Davino: Next time, next time we can do it a little different.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 Conway: [Inaudible] he wants ten, but I can't fuck around with it, cause I don't like moving it. He supplies a lot of people.
 
 
 13
 When Rowe returned about an hour later with the $72,000, the undercover officer placed both Rowe and Conway under arrest.
 
 
 14
 In April 1993, Conway and Rowe were indicted on one count of conspiracy to possess with intent to distribute and one count of attempting to possess with intent to distribute three kilograms of cocaine, in violation of 21 U.S.C. § 846. In April 1994, Conway pleaded guilty to Count II of the indictment, without entering into a plea agreement with the government.
 
 
 15
 The Presentence Report (PSR) recommended that Conway be held accountable for attempting to facilitate the distribution of ten kilos. In addition to the statements from Rowe and Davino indicating that the "complete" deal was for ten kilos, and the recording that indicated Conway's awareness of that fact, the report noted that Rowe advised the U.S. Attorney's office that he and Conway had funds available to purchase the remaining cocaine, and that they would have purchased an additional seven kilos from Davino if they had not been stopped. Special Agent Bernard Bolf of the Drug Enforcement Administration, who apparently was the agent responsible for supervising Davino, also indicated that Conway clearly expressed his intention to purchase the additional seven kilos subsequent to the initial deal. Conway objected to the PSR, principally on the ground that he was not reasonably capable of purchasing the additional seven kilos. He also noted that the money recovered represented the price for only three kilos, and that there was never any specific agreement on time and location for the seven kilo part of the deal.
 
 
 16
 At the sentencing hearing, the district court heard testimony from both Davino and Rowe, and it had before it the transcripts of Davino's recorded conversations with Conway. Based on this record, the court found that Conway intended to, and was reasonably capable of, purchasing the full ten kilograms of cocaine. This translates into a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4). The court then reduced the base level by two for acceptance of responsibility. U.S.S.G. § 3E1.1(a). Conway's adjusted offense level of 30 and criminal history category of I resulted in a sentencing range of 97 to 121 months. The court sentenced him at the bottom of that range, to 97 months.
 
 
 17
 This Court reviews a district court's finding of fact concerning the quantity that should be included as "relevant conduct" under U.S.S.G. § 1B1.3(a)(2) under the clearly erroneous rule. See 18 U.S.C. § 3742(e); United States v. Garcia, 69 F.3d 810, 819 (7th Cir.1995); United States v. Townsend, 73 F.3d 747, 751 (7th Cir.1996); United States v. Windom, --- F.3d ----, No. 94-3351, 1996 WL 209919 at * 2 (7th Cir., Apr. 30, 1996). Under the Sentencing Guidelines, when a court calculates a defendant's base offense level, it must examine all of the defendant's acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). At the time Conway was sentenced, Application Note 12 to U.S.S.G. § 2D1.1 provided that "[i]n an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." Amendment 518 deleted that language and substituted the more general rule that "[i]n an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." The effective date of Amendment 518 is November 1, 1995. Both versions instruct the court to exclude from the guideline calculation any amount that the defendant did not intend to produce and was not reasonably capable of producing (although under Amendment 518 the burden of proving these exonerating facts is on the defendant).
 
 
 18
 Under the version of the Guidelines that controlled Conway's case, it was the government's burden to prove both intent and capability to provide the full ten kilograms. United States v. Garcia, 69 F.3d 810, 819 (7th Cir.1995). Although a defendant cannot be sentenced for amounts he did not intend to buy and was not reasonably capable of obtaining for the sale, or as this Court put it in Garcia, not on the basis of his braggadocio and puffery, id. at 820, the weight under negotiation is a proper basis for the sentence if the district court finds those key facts present. See United States v. Jean, 25 F.3d 588, 598 (7th Cir.1994).
 
 
 19
 Here, Conway admits that the three kilograms of cocaine that were the immediate subject of the March 5 transaction were properly attributed to him. (These alone would have given him a base offense level of 28, and an adjusted level of 26, which corresponds to a sentencing range of 63-78 months). He argues only that, because he lacked the money to purchase cocaine from Davino, the court clearly erred in finding that he was reasonably capable of completing the planned ten kilo deal. Even if this is one possible interpretation of the facts, the district court was not compelled to view the evidence this way. It was obvious that Conway was working as a middleman, and equally obvious that he was able to arrange for the production of the tidy sum of $72,000 from Fox on about an hour's notice. Under these circumstances, a lack of cash on hand does not reflect an inability to purchase the negotiated amount. United States v. Cotts, 14 F.3d 300, 307 (7th Cir.1994); United States v. Jean, 25 F.3d at 598; United States v. Mahoney, 972 F.2d 139, 142 (7th Cir.1992). Considering the record as a whole, the district court was entitled to conclude that the deal involved a full ten kilos, and that Conway was capable of carrying through with it.
 
 
 20
 We therefore AFFIRM the sentence of the district court.