142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
John Leroy HUNT, Defendant-Appellant
 No. 97-1653.
 United States Court of Appeals,
Seventh Circuit.
 .
Argued March 3, 1998.
Decided April 20, 1998.
 
 Appeal from the United States District Court for the Southern District of Illinois. No. 96-CR-30050-WDS William D. Stiehl, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Following a jury trial, John Leroy Hunt was found guilty of two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1). At sentencing, the district court attributed 116.55 grams of crack cocaine to Hunt as relevant conduct, giving him a base offense level of 32 (at least 50 grams but less than 150 grams of cocaine base). U.S.S.G. § 2D1.1(c)(4). On appeal, Hunt contends that the district court clearly erred in finding that his relevant conduct included 85.05 grams of crack cocaine that he agreed to sell to an undercover agent, but never delivered. He argues that he did not intend to provide or was not reasonably capable of providing that quantity, which according to Application Note 12 of § 2D1.1 of the Sentencing Guidelines precludes the district court from attributing the agreed-upon quantity to him. We affirm.
 
 
 2
 The Metropolitan Enforcement Group of Southwestern Illinois, a drug task force run by the Illinois State Police, began investigating the activities of Hunt in March 1996 after receiving information that he was selling cocaine base. Agent Jerry Simon first purchased 5.9 grams of crack cocaine from Hunt, and shortly thereafter purchased 25.5 grams from him. In the course of the second purchase, Agent Simon inquired about purchasing 85.05 grams of crack cocaine from Hunt, and Hunt told Simon to contact hum when he was ready to make the purchase.
 
 
 3
 Over the next two weeks, Agent Simon had approximately five or six conversations with Hunt regarding the purchase of the 85.05 grams of crack cocaine. Agent Simon met Hunt to make the purchase, but Hunt did not have the crack cocaine allegedly because his source was out of town and his alternate source would not front him that much crack cocaine. Hunt tried to persuade Agent Simon to meet with the source at another location, but Agent Simon declined and told Hunt to contact him if he obtained the 85.05 grams.
 
 
 4
 Approximately one week later, Agent Simon met Hunt at a Quik Trip gas station to purchase a quantity of crack cocaine. Agent Simon told Hunt that the supposed crack cocaine looked fake, like soap or wax. Hunt insisted that it was the real thing, and persuaded Agent Simon to go outside and talk to his "boy," apparently referring to the passenger in his car. When Agent Simon attempted to return to his car, Hunt tried to pull him into Hunt's vehicle and a physical altercation ensued. The surveillance officers moved in, rescuing Agent Simon and arresting Hunt.
 
 
 5
 Following his arrest, Hunt told the interviewing agent that his supplier had ripped him off. Hunt also signed a written statement admitting that he intended to sell crack cocaine to Simon (known to Hunt as "Doug" or "Dave"), and that Simon realized the substance was soap before Hunt realized it. In his statement, Hunt also identified his drug dealing partner as Cory Makin. Hunt later signed another written statement in which he admitted selling Simon an ounce (the 25.5 grams) of crack cocaine. Hunt did not know that Simon was an undercover agent when he made these post-arrest statements.
 
 
 6
 By the time of trial, Hunt had changed his story. He tried to discredit his post-arrest statements, claiming that he just told the agent "whatever he wanted to hear." Hunt denied that he sold crack cocaine to Simon, and denied meeting with Simon to sell him 85.05 grams. With respect to the incident resulting in his arrest, Hunt testified that he wanted to pass off some fake substance to Simon so he could take Simon's money.
 
 
 7
 At sentencing, Hunt objected to the inclusion of the 85.05 grams he negotiated to sell to Agent Simon but never delivered. Hunt argued that he was not reasonably capable of providing 85.05 grams of crack cocaine because the largest quantity he was convicted of selling was 25.5 grams. The district court nevertheless included the 85.05 grams as relevant conduct because Hunt had negotiated to sell that quantity of crack cocaine to Agent Simon. U.S.S.G. §§ 1B1.3(a)(2). 2D1.1.
 
 
 8
 The district court's determination of the quantity of drugs attributable to Hunt as relevant conduct is a factual finding reviewed for clear error. See United States v. Bonilla-Comacho, 121 F.3d 287, 292 (7th Cir.1997). We will reverse a finding of fact as clearly erroneous only if we are "left with the definite and firm conviction that a mistake has been committed." Id. (citing United States v. Garcia, 69 F.3d 810, 819 (7th Cir.1995)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
 
 
 9
 On appeal as at sentencing, Hunt relies on application note 12 of § 2D1.1 of the Sentencing Guidelines. Note 12 provides:
 
 
 10
 In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level ... If, however, the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.
 
 
 11
 Application Note 12, U.S.S.G. § 2D1.1 (emphasis added). Hunt thus has the burden of showing that he did not have the intent or capability of providing the agreed-upon quantity of crack cocaine. Bonilla-Comacho, 121 F.3d at 292 n. 2.
 
 
 12
 Hunt contends that he was not reasonably capable of providing 85.05 grams of crack cocaine because he never provided Agent Simon with more than 25.5 grams of crack cocaine, and because there is no evidence demonstrating his ability to provide a larger quantity of crack cocaine.
 
 
 13
 The fact that Hunt never provided more than 25.5 grams of crack cocaine to Agent Simon does not prove that Hunt was unable to provide larger quantities of crack cocaine. Prior to the day Agent Simon was supposed to buy the 85.05 grams, Hunt had not indicated that he would have any difficulty obtaining that quantity. When Agent Simon met with Hunt to consummate the deal, Hunt explained that he did not have the 85.05 grams because his regular source was out of town and his alternate source would not front him that much. However, Hunt assured Agent Simon that he could purchase the 85.05 grams or more if he agreed to meet with Hunt's alternate source in person. Arguably, the deal failed because Agent Simon would not agree to meet the source at another location, not because Hunt was unable to provide the 85.05 grams of crack cocaine. Because the district judge did not clearly err in taking Hunt "at his word as to his ability to deliver the goods." United States v. Salazar, 983 F.2d 778, 783 (7th Cir.1993), Hunt's argument must fail. See also United States v. Jean. 25 F.3d 588, 598-99 (7th Cir.1994).
 
 
 14
 Hunt also argues, for the first time on appeal, that he did not intend to provide Agent Simon with 85.05 grams of crack cocaine, but instead planned only to rob Simon of the money he would be carrying for the deal. Despite Hunt's testimony at trial that he intended to rob Agent Simon rather than sell him crack cocaine, the district court did not find that testimony credible. We defer to the district court's judgment on matters of credibility. See United States v. House, 110 F.3d 1281, 1286 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 199, 139 L.Ed.2d 136 (1997).
 
 
 15
 Hunt raises several other arguments for the first time in his pro se supplemental reply brief. Hunt emphasizes that the primary Brief of Counsel was completed only days before the primary brief deadline, and "it would have been impossible to file a Supplemental [pro se ] Brief without first [receiving] the Brief of Counsel." Hunt's argument has two flaws. First, appellants often have no attorney at all, but nonetheless submit their primary brief before the deadline. Therefore, we disagree with Hunt that it would have been "impossible" for him to complete his brief without first receiving the brief of his attorney. Second, an appellant who is already represented by counsel has no constitutional right to file a pro se brief. See Hayes v. Hawes, 921 F.2d 100, 102 (7th Cir.1990) (Although a defendant has no Sixth Amendment right to file a pro se brief when he is represented by counsel, an appellate court may accept the brief and consider the arguments contained therein.). Although we may consider Hunt's arguments when they are made on time, we certainly need not consider such arguments after the deadline for filing the primary brief has elapsed. Arguments raised for the first time in a reply brief are waived. United States v. Spaent, 60 F.3d 313, 317 (7th Cir.1995); United States v. Berkowitz, 927 F.2d 1376, 1391 (7th Cir.1991) (citing Fed. R.App. P. 28, Seventh Circuit Rule 28(f)). Therefore, we decline to consider Hunt's arguments further.
 
 
 16
 For the foregoing reasons, we AFFIRM the judgment of the district court.